UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Alanea White,

       Plaintiff,

                                          **COMPLAINT**

   vs.

Northstar Media, Inc.

       Defendant.

---

**The Parties**

1.     Plaintiff, Alanea White, ("White") is an individual who resides at 328 Lark Street, Sandstone, Minnesota 55072.

2.     Defendant, Northstar Media, Inc. ("Defendant") is a Minnesota Corporation with a general business office at 930 Cleveland Avenue South, Cambridge, MN 55008 and a registered office at 4779 Bloom Avenue, White Bear Lake, Minnesota 55110.

3.     Defendant is the owner and publisher of eight (8) East central Minnesota newspapers and advertising shoppers including the *Isanti-Chicago County Star, Pine City Pioneer, Hinckley News, Pine County Courier, Askov American, Moose Lake Star-Gazette, The Advertiser, and The Evergreen Shopper* ("Defendant's Publications") and is affiliated

with Press Publications, Sentinel Publications, and Kanabec Publications ("Related Entities").

4.     Ms. White was employed by Defendant, Northstar Media, Inc. from June 10, 2019 to June 21, 2020, primarily as the editor of the *Pine City Courier* and from June 22, 2020 to December 27, 2021 primarily as the editor of the *Moose Lake Star Gazette*.

5.     Defendant, Northstar Media, Inc. describes its operation of the *Moose Lake Star Gazette* as follows:

# About Us

The Moose Lake Star-Gazette, established in 1895 is a 1,800 circulation community newspaper serving the Moose Lake area. The Evergreen Shopper, with a free distribution of over 1,300 homes in Carlton and Pine Counties, is the leading marketing tool for businesses in the region.

These publications are part of NorthStar Media, which also publishes the Pine City Pioneer pinecitymn.com, Hinckley News hinckleynews.com, Pine County Courier, pinecountycourier.com, and Askov American http://askov-american.com , all located in Pine County.

North Star Media, owned by Gene Johnson of White Bear Lake, Minnesota, also publishes the free distribution newspaper Isanti-Chisago County Star isanti-chisagocountystar.com located in Cambridge, Minnesota. NorthStar Media also operates a commercial web printing division, which is also located in Cambridge.

## Affiliated Newspapers

Kanabec Publications, owned by Gene Johnson, is located in Mora, Minnesota and publishes the Kanabec County Times moraminn.com and Advertiser shopper and also provides on demand digital copy services.

Press Publications presspubs.com owned by Carter Johnson of White Bear Lake, Minnesota, is a family owned group of weekly newspapers covering the Northeast suburbs of the Twin Cities.

Sentinel Publications, a group of community newspapers in Northwest Wisconsin, covers the communities of Grantsburg burnettcountysentinel.com, Osceola osceolasun.com, Amery theameryfreepress.com, Baldwin baldwin-bulletin.com and Scandia, Minnesota countrymessenger.com. The papers are owned by Carter Johnson of White Bear Lake, Minnesota.

6.     Defendant, Northstar Media, Inc. also operates and provides online digital news service, for which Plaintiff, Alanea White provided editorial services and which Defendant describes as follows:

# About Us

The pinecountynews.com website is comprised of the Pine City Pioneer, the Hinckley News, the Pine County Courier, and the Askov American community newspapers located in Pine County, Minnesota.

These newspapers are part of NorthStar Media which operates the Star Gazette mlstargazette.com and Evergreen Shopper located in Moose Lake, Minnesota, the Isanti-Chisago County Star isanti-chisagocountystar.com free distribution newspaper in Cambridge, Minnesota as well as a commercial web printing division, also based in Cambridge.

NorthStar Media is owned by Gene Johnson of White Bear Lake.

The Pine City Pioneer, founded in 1873, has a circulation of 2,500 and also has a companion 5,300 circulation free distribution shopper called the Advertiser. pinecitymn.com.

The Hinckley News, established 1891 as the Pine Wood Dart, is a 1,000 circulation newspaper. hinckleynews.com.

The Pine County Courier, established in 1894 is located in Sandstone, Minnesota and has a circulation of 1,500. pinecountycourier.com.

The Askov American newspaper has a circulation of over 1,300 and was established in 1914. askov-american.com.

## Affiliated Newspapers

Kanabec Publications, owned by Gene Johnson, is located in Mora, Minnesota and publishes the Kanabec County Times moraminn.com and Advertiser shopper and also provides on demand digital copy services.

Press Publications presspubs.com owned by Carter Johnson of White Bear Lake, Minnesota, is a family owned group of weekly newspapers covering the Northeast suburbs of the Twin Cities.

Sentinel Publications, a group of community newspapers in Northwest Wisconsin, covers the communities of Grantsburg burnettcountysentinel.com, Osceola osceolasun.com, Amery theameryfreepress.com, Baldwin baldwin-bulletin.com and Scandia, Minnesota countrymessenger.com. The papers are owned by Carter Johnson of White Bear Lake, Minnesota.

7.      The aggregated circulation of the Defendant's Publications is greater than 4,000.

8.      Defendant's general Business Office is located at 930 Cleveland Avenue South, Cambridge, Minnesota 55008, which is also the office of the Publisher of each of Defendant's Publications, Jeff Andres.  All printing of each of Defendant's Publications takes place in Cambridge, Minnesota.

**Jurisdiction**

9.      The Complaint contains causes of action for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 209; Minnesota Statutes § 181.032, and Minnesota Statutes §§ 181.101 and 181.171.

10.     This Court has original federal question jurisdiction under 28 U.S.C. §1331 because this case includes claims arising under the laws of the United States, specifically, claims arising under the FLSA, 29 U.S.C. §§ 201 to 209.

11.     This Court has supplemental jurisdiction over the other claims pursuant to 28 U.S.C. § 1367.

**COUNT I**
**Failure to Pay Required Minimum Salary or, alternatively, Overtime**

12.     Defendant is an "enterprise engaged in commerce" within the scope and meaning of 29 U.S.C. 203 (r)(1).

13.     On information and belief, Defendant's Publications are (1) engaged in related activities; (2) under unified operation and common control; and (3) have a

4

common business purpose.  Having these three characteristics, the businesses are treated as a single entity for purposes of applying the FLSA;

14.     On or about June 10, 2019, Plaintiff, Alanea White, was hired by Defendant, to be the editor of the *Pine County Courier*.  On or about June 22, 2020 she became the editor of the *Moose Lake Star Gazette.*  In addition to providing services for Defendant's "hard copy" newspapers, Plaintiff, Ms. White, provided services for Defendant's digital news services, which had distribution on the Internet and, on information and belief, across state lines.

15.     At all times relevant herein, Plaintiff, Alanea White, was an employee of Defendant and was individually engaged in commerce and/or in the production of goods for commerce.  Accordingly, in addition to Defendant being covered by the FLSA as an "enterprise engaged in commerce"; Plaintiff's individual activities are also covered under the FLSA;

16.     At the time of her hire, on information and belief, Defendant advised Ms. White she was an exempt salaried employee.

17.     At no time since her hire has Defendant advised Ms. White that she was a non-exempt employee and entitled to overtime if she worked more than 40 hours in a workweek; nor has the Defendant ever requested or required Ms. White to provide weekly time records of her hours worked, as required under 29 C.F.R 516.2 for employers employing non-exempt employees;

18.     At no time since her hire in June 2019 has Ms. White been paid overtime for hours worked in excess of forty (40) in any workweek;

19.     On information and belief, defendant's refusal to require and keep time records of employee hours worked and to pay overtime for hours worked over 40 in a workweek was "intentional" and "willful" under the FLSA.  As a result, the statute of limitations should be extended to a period of three (3) years.

20.     Effective January 1, 2020, the minimum required salary for an exempt employee under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209, was raised from $455 per week to $684 per week.

21.     On June 23, 2020, Ms. White was hired by Defendant to be the editor of the *Moose Lake Star Gazette*. Thereafter, Defendant attempted to get Ms. White to agree to an Employment Agreement that included a non-competition restrictive covenant that sought to restrict her from employment within 35 miles of all Defendant's Publications, plus the additional Related Entities, with the following language:

> a.     Limited Non-Competition.  For the term of Employee's employment with the Company and extending one (1) year immediately following the last day of such employment (the "Termination Date"), regardless of the reason or circumstances of the termination of such employment (such term constituting the "Restricted Period"), Employee shall not, without the Company's express, written, prior approval, directly or indirectly provide, whether as an employee, contractor, consultant, owner, partner, or any other role, services to any entity or person engaged in the same or similar business as those conducted by the Company, within a 35 mile radius of White Bear Lake, Minnesota; Mora, Minnesota; Cambridge, Minnesota; Pine City, Minnesota; Scandia, Minnesota; Moose Lake, Minnesota, Hinckley, Minnesota, Sandstone, Minnesota, Askov,

6

Minnesota; Amery, Wisconsin; Osceola, Wisconsin; or Grantsburg, Wisconsin; Baldwin, Wisconsin, or any other municipality that is an area of circulation for Press Publications, Kanabec Publications, North Star Media, or Sentinel Publications, or any entity that is acquired by or merged into any of those entities, as of the Termination Date (collectively, the "Related Entities").  For purposes of this Agreement, the "same or similar business" includes any form of media (e.g., television, radio, newspapers and other print media, internet, websites, etc.) that sells display advertising to customers.

22.     The Non-Competition restrictive covenant in the foregoing paragraph is an admission by Defendant that it was an "enterprise engaged in commerce" and that the circulation of all Defendant's Publications should be aggregated to determine Defendant's status under the FLSA.

23.     At no time after January 1, 2020 was Ms. White paid a salary of $684 per week.

24.     As a result of the failure to pay the minimum required salary for exempt employees, Ms. White is entitled to either the minimum salary she should have been paid of $684 per week since January 1, 2020 or overtime at one-and-one-half (1 ½) times her regular rate of pay since her original date of hire in June 2019, together with an equal amount of liquidated damages, pre- and post-judgment interest, costs, disbursements, and attorney fees.  The current amount owed, subject to future increasing interest, costs, disbursements, and attorney's fees is approximately $20,000.

**Count II**
**Violation of Minn. Stat. § 181.032**

25.     All preceding paragraphs are incorporated herein as if fully stated.

26.    On or about June 23, 2020, Ms. White's positions with the *Pine County Courier* was terminated and she was then rehired to became the editor of the *Moose Lake Star Gazette.*  After beginning work at the *Moose Lake Star Gazette* Defendant demanded that she sign a new Employment Agreement (as indicated in paragraph numbered 17 above) with restrictive covenants that covered all areas of Minnesota and Wisconsin for Defendant's Publications plus the publications and on-line news services of the additional "Related Entities."  Ms. White never signed the Employment Agreement as presented to her.

27.    In 2019, the Minnesota legislature passed Minn. Stat. § 181.032, the Wage Theft Act, which required, a Minnesota employer from and after July 1, 2019 to provide an employee notice of the following:

(d) At the start of employment, an employer shall provide each employee a written notice containing the following information:

(1) the rate or rates of pay and basis thereof, including whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other method, and the specific application of any additional rates;

(2) allowances, if any, claimed pursuant to permitted meals and lodging;

(3) paid vacation, sick time, or other paid time-off accruals and terms of use;

(4) the employee's employment status and whether the employee is exempt from minimum wage, overtime, and other provisions of chapter 177, and on what basis;

(5) a list of deductions that may be made from the employee's pay;

(6) the number of days in the pay period, the regularly scheduled pay day, and the pay day on which the employee will receive the first payment of wages earned;

(7) the legal name of the employer and the operating name of the employer if different from the legal name;

(8) the physical address of the employer's main office or principal place of business, and a mailing address if different; and

(9) the telephone number of the employer.

(e) The employer must keep a copy of the notice under paragraph (d) signed by each employee acknowledging receipt of the notice. The notice must be provided to each employee in English. The English version of the notice must include text provided by the commissioner that informs employees that they may request, by indicating on the form, the notice be provided in a particular language. If requested, the employer shall provide the notice in the language requested by the employee. The commissioner shall make available to employers the text to be included in the English version of the notice required by this section and assist employers with translation of the notice in the languages requested by their employees.

(f) An employer must provide the employee any written changes to the information contained in the notice under paragraph (d) prior to the date the changes take effect.

28.     Despite the termination in her position as editor at the *Pine County Courier* and rehire to become the editor of the *Moose Lake Star Gazette*, Ms. White was not advised of any of the information required under Minn. Stat. § 181.032, including whether she was an exempt employee or whether she was entitled to overtime if she worked in excess of forty (40) hours in a workweek.

29.     Pursuant to Minn. Stat. § 181.171, an employer that violates Minn. Stat. §

181.032 "shall also be liable for compensatory damages and other appropriate relief."

30.     As a result of Defendant's violation of Minn. Stat. § 181.032, Ms. White is

entitled to compensatory damages, in an amount to be determined, together with pre-

and post-judgment interest, reasonable costs, disbursements, witness fees, and attorney

fees.

**Count III**
**Violation of Minn. Stat. § 181.101**

31.     All preceding paragraphs are incorporated herein as if fully stated.

32.     On October 26, 2021, Ms. White, through her attorney, made demand on

Defendant, for the payment of the difference in her salary and $684 per week, the

minimum salary for exempt employees.

33.     Thereafter, on December 23, 2021, Ms. White, through her attorney,

provided Defendant a full and complete listing of her overtime since her original start of

employment of June 10, 2019.

34.     Under Minn. Stat. § 181.101:

If wages or commissions earned are not paid, the commissioner of labor
and industry or the commissioner's representative may serve a demand
for payment on behalf of an employee. In addition to other remedies
under section177.27, if payment of wages is not made within ten days of
service of the demand, the commissioner may charge and collect the
wages earned at the employee's rate or rates of pay or at the rate or rates
required by law, including any applicable statute, regulation, rule,
ordinance, government resolution or policy, contract, or other legal
authority, whichever rate of pay is greater, and a penalty in the amount of

the employee's average daily earnings at the same rate or rates for each day beyond the ten-day limit following the demand. If payment of commissions is not made within ten days of service of the demand, the commissioner may charge and collect the commissions earned and a penalty equal to 1/15 of the commissions earned but unpaid for each day beyond the ten-day limit. Money collected by the commissioner must be paid to the employee concerned. This section does not prevent an employee from prosecuting a claim for wages.

35. Violations of Minn. Stat. § 181.101 are subject to private enforcement under Minn. Stat. § 181.171.

36. Under Minn. Stat. § 181.171, subd. 1:

An employer who is found to have violated [181.101] is liable to the aggrieved party for the civil penalties or damages provided for in the section violated. An employer who is found to have violated the above sections shall also be liable for compensatory damages and other appropriate relief including but not limited to injunctive relief.

37. Defendant has willfully and intentionally failed to pay Plaintiff, Ms. White for any overtime or any wages owed after demand

38. As Defendant did not pay Ms. White within ten (10) days of demand, Ms. White is entitled to one day's wages for each day after ten days after demand until full payment has been made, together with pre- and post-judgment interest, reasonable costs, disbursements, witness fees, and attorney fees.

**AD DAMNUM**

**WHEREFORE,** Plaintiff, Alanea White, prays judgment of the Court:

1. Awarding her the difference between her salary and $684 per week for each week from January 1, 2020 until December 27, 2021, or in the alternative, one-

and-one-half (1 ½) times her regular rate of pay for each hour worked over forty (40) in a workweek since June 10, 2019, together with an equal amount as liquidated damages, pre- and post-judgment interest, reasonable costs, disbursements, witness fees and attorney's fees;

2.      Reasonable damages, in an amount to be determined, under Minn. Stat. § 181.032, together with pre- and post-judgment interest, reasonable costs, disbursements, witness fees and attorney's fees; and

3.      One day's wages, pursuant to Minn. Stat. § 181.101, as privately enforced under Minn. Stat. §181.171, as a penalty for each day after demand beyond ten (10) that Defendant delays the payment of the minimum required salary of $684/week, or in the alternative, overtime at one-and-one-half (1 ½) Ms. White's regular rate of pay for each hour worked in each workweek over 40, together with pre- and post-judgment interest, reasonable costs, disbursements, witness fees and attorney's fees.

4.      Such other and further relief, which to the Court is appropriate.

Dated: December 29, 2021          **FRYBERGER LAW FIRM**

                                  s/ Donald C. Erickson
                                  Donald C. Erickson, Mn. Atty. ID # 27157
                                  302 W. Superior St., Ste. 700
                                  Duluth, MN 55802

                                  218.391.0145 Mobile
                                  218.625.9252 Private E-Fax
                                  derickson@fryberger.com

                                  **Attorneys for Plaintiff, Alanea White**

12