UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alanea White, | Case No. 21-cv-2770 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Northstar Media, Inc., | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Plaintiff Alanea White and Defendant Northstar Media, Inc.'s Renewed Joint Motion for Settlement Approval. [ECF No. 17]. After reviewing the additional information provided by the parties, the motion is GRANTED.

## II. BACKGROUND

Ms. White began working as the editor of the *Pine County Courier* in June 2019, one of Northstar Media's newspapers. [Compl. ¶ 14, ECF No. 1]. In June 2020, she transitioned to a different Northstar Media publication, the *Moose Lake Star Gazette*, where she continued to work as editor until December 2021. [*Id.*] She also provided editorial services for Northstar Media's online digital news services. [*Id.*] Northstar Media, Inc. is a Minnesota corporation that owns and publishes eight newspapers and advertising shoppers in Minnesota. [*Id.* ¶¶ 2–3]. Ms. White alleges that, at the time of her hire, she was advised that she was a salaried employee who was exempted from FLSA, and therefore neither entitled to overtime if she worked more than 40 hours per week nor subject to the federal minimum weekly salary. [*Id.* ¶¶ 16–18]. In this action, Ms. White argues that she was not an exempt employee under FLSA and was therefore entitled to both. [*Id.* ¶ 15].

She argues that she worked 74.75 overtime hours from June 2019 and December 2019, at an hourly rate of $22.20. [Erickson Decl. at 1–3, ECF No. 10]. From January 1, 2020, to December 27, 2021, Ms. White argues that she worked 337.08 hours of overtime, at a pay rate of $14.80 and $22.20 per hour. [*Id.*] Furthermore, for the first seven bi-weekly pay periods after January 1, 2020, Ms. White claims that she was paid $1,106.92, which was $261.08 less per pay period than the required FLSA minimum salary amount. [*Id.*] Thereafter, she alleges that she was paid $1,183.84, which was $181.16 less than required. [*Id.*] In its defense, Northstar Media denies these claims and argues that its employment policies prohibited Plaintiff from working in excess of 40 hours per week. [Joint Mem. at 2, ECF No. 10].

### A. Settlement

Ms. White brought this action on December 29, 2021. On January 24, 2022, the parties settled the case, agreeing pay certain back wages, liquidated damages, and attorneys' fees and costs, for a total settlement payment of $20,537.00. [Settlement, ECF No. 11]. Northstar Media has agreed deliver three separate checks containing the following:

> a. <u>Back Wage Payment.</u> A check in the gross amount of Six Thousand Dollars ($6,000), less taxes withheld at the supplemental federal rate of 22% and the Minnesota supplemental rate of 6.25% payable to "Alanea White." The net amount of the check shall be Three Thousand Eight Hundred Forty-Six and No/100 and No/100 Dollars ($3,846.00) after deductions of Four Hundred Fifty-Nine Dollars ($459.00) for FICA, One-Thousand Three Hundred Twenty and No/100 Dollars ($1,320.00) for federal income taxes, and Three Hundred Seventy-Five and 0/100 Dollars ($375.00) for Minnesota state income taxes. The Parties agree that this check is intended as compensation for alleged unpaid salary and back pay, and in specific exchange for the wage and hour release;
> b. <u>Liquidated Damages Payment.</u> A check in the gross amount of Six Thousand Dollars ($6,000) without deductions payable to Plaintiff as compensation for alleged liquidated damages, and in exchange for the wage and hour release; and
> c. <u>Attorney Fees and Costs Payments.</u> A check in the gross amount of Eight Thousand Five Hundred Thirty-Seven Dollars ($8,537.00) payable to the law firm of Fryberger, Buchanan, Smith & Frederick, P.A. as and for

>   Plaintiffs attorney fees and costs incurred in connection with this matter, and in specific exchange for the wage and hour release set forth in Section 4, consisting of $8,000 in attorney fees and $537 in costs, payable to "Fryberger, Buchanan, Smith & Frederick, P.A." (the Fryberger Law Firm).
>   . . .

[*Id.*]

On February 22, 2022, the parties submitted a Joint Motion for Approval of Settlement. [ECF No. 8].  The Court denied this motion without prejudice, requesting information regarding whether the attorneys' fees were separately negotiated, and if not, requesting further justification for the reasonableness of those fees.  [ECF No. 13].  The parties submitted the additional information and indicated that the attorneys' fees were not separately negotiated, as well as sufficient data for a lodestar calculation.  [ECF No. 14].

### III.   DISCUSSION

#### A.   Legal Standard

The Eighth Circuit has declined to decide whether judicial approval is required for all FLSA settlements. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).  The parties here have requested the Court's approval in their settlement, so the Court will assume without deciding that its approval is required.  A district court reviewing a proposed settlement under FSLA may approve the settlement "after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017).

#### A.   Bona Fide Dispute

A settlement reflects a bona fide dispute where it involves "a reasonable compromise over issues actually in dispute as employees may not waive their entitlement to minimum wage and overtime pay under the FLSA." *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 8, 2017).  Parties must disagree regarding the liability

of the issues or the wages to be paid.  *Id.*  Ms. White claims that her employer violated FLSA by failing to compensate her for overtime work or, in the alternative, by paying her the required minimum salary for exempt employees.  *See* 29 U.S.C. §§ 207(a), 213(a)(l).  Her employer, Northstar Media, disputes whether Ms. White is covered by FLSA and that her overtime work was compensable under the statute.  Therefore, this settlement reflects compromise for a bona fide dispute between the parties.

      B.  **Settlement Terms are Equitable and Fair**

"To determine whether settlement terms are fair and equitable to all parties, a district court may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case."  *Stainbrook*, 239 F. Supp. 3d at 1126.

Regarding the first factor, settlements occurring before the commencement of formal discovery may be fair where the parties have exchanged sufficient information to evaluate their claims.  *Netzel*, 2017 WL 1906955, at *5 ("[T]he failure to engage in formal discovery is not fatal to a Court's approval of a FLSA settlement agreement").  The parties here assert that they have exchanged sufficient information throughout their settlement discussions, which occurred both before and after the filing of the Complaint.  For the second factor, Ms. White was represented by experienced counsel for the duration of the litigation and negotiations.  As to the third factor, Plaintiff states that her claims are likely to be successful; however, success on the merits is never assured.  *Seow v. Miyabi Inc.*, No. 19-CV-2692 (JNE/DTS), 2021 WL 3616894, at *2 (D. Minn. July 15, 2021) ("[A] settlement agreement avoids delay and uncertainty.").  For

the fourth and fifth factors, the parties assert that the settlement was reached through arms-length negotiations and the Court finds no evidence of overreaching by Northstar Media.

The Court also finds that the settlement payment, amounting over $12,000 for Ms. White, excluding attorneys' fees, is fair and reasonable.  Excluding attorneys' fees, Ms. White will receive roughly 65% of the back pay and liquidated damages that she would be entitled to if she was successful on all of her overtime claims.  The settlement payment amounts to nearly 60% of her alternative claims for failure to pay the minimum required salary.  As Ms. White was in no way guaranteed to succeed on all of her claims or receive one hundred percent of the back pay and liquidated damages that she requested, the Court finds that this settlement is a reasonable compromise between parties.

### C.  Attorneys' Fees

Generally, FLSA settlements do not require judicial approval of attorneys' fees and costs, so long as "the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim" and where "there was no conflict of interest between the attorney and his or her client."  *Barbee*, 927 F.3d at 1027, n.1.  However, where those fees are not separately negotiated, the Court must review those fees for reasonableness by comparing the settlement fees to fees calculated by the lodestar method, which multiplies the number of hours worked by a reasonable hourly rate.  *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021).

The attorneys' fees here were not negotiated separately and are therefore subject to review.  The settlement awards Ms. White's attorney $8,000 in attorney fees and $537 in costs.

The settlement fee award is a substantial reduction from the calculated lodestar.  Ms. White's attorney, Donald Erikson, has over 36 years of litigation experience and charges $370 per hour.  Mr. Erikson provides that he expended 60.2 hours working on this case.  Calculating

the lodestar at $22,274, Ms. White's attorney has therefore taken a 64.1% reduction in fees in this settlement, which the Court finds to be reasonable. *Seow*, 2021 WL 3616894, at *2 (approving settlement fees that were 62% lower than the lodestar calculation.)

Furthermore, the settlement fees are consistent with Ms. White's Representation Agreement with Mr. Erikson. Under this agreement, if the case settled and the attorney's fees were not negotiated separately, Ms. White agreed to provide a contingent fee of 40% of the total recovery, plus costs, expenses and interest. The settlement fees amount to 40% of the total recovery, not including the $537 in costs.

As the settlement fees and costs are significantly lower than the calculated lodestar and consistent with the Representation Agreement, the Court finds that the fees and costs are reasonable.

### IV.     CONCLUSION

Accordingly, the parties have established that the settlement agreement is fair and equitable to all parties. **IT IS HEREBY ORDERED THAT:**

1. The parties' motion for approval of settlement, (Dkt. 17), is **GRANTED.**

2. The matter is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 25, 2022

    *s/Katherine Menendez*
Katherine Menendez
United States District Judge